# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1868

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Sheffaye Johnson, | * | |
| also known as Faye, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 22, 1998

Filed:   March 19, 1999

_____

Before McMILLIAN, JOHN R. GIBSON and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Sheffaye Johnson appeals from a final judgment entered in the United States District Court for the District of Nebraska finding her guilty, following a conditional plea of guilty, of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846.  The district court sentenced appellant to 70 months imprisonment, 5 years supervised release, and a special assessment of $100.00.  For reversal, appellant argues the district court erred in denying her motion to suppress certain evidence seized pursuant to a search warrant from an Express Mail package.  For the reasons discussed below, we reverse

the district court's denial of the motion to suppress, which, in turn, requires that we reverse the conviction, and we remand the case to the district court for further proceedings, if so advised.

The district court had jurisdiction under 18 U.S.C. § 3231; we have appellate jurisdiction under 28 U.S.C. § 1291.

The background facts are not disputed. On May 31, 1996, United States Postal Inspection Officer G.G. Vajgert intercepted and detained an Express Mail package sent by appellant from the Los Angeles, California, International Airport on May 30, 1996. The package fit the characteristics of an Express Mail/ Narcotics Profile developed to detect the use of Express Mail service for drug trafficking: the return and destination labels were hand-written, the package was mailed from one individual (appellant) to another individual at the same address, the package was mailed from a narcotics "source" state (California), and the return address zip code was different from the accepting zip code. The package was presented to a drug dog. The drug dog "alerted" to the package, indicating that the package contained a controlled substance. Vajgert applied for a search warrant to search the package on the basis of this information. A federal magistrate judge issued the search warrant. Vajgert opened the package and discovered and seized 3.8 ounces of methamphetamine. After further investigation, the officers arrested appellant. The indictment charged her with conspiracy and distribution of methamphetamine. Appellant moved to suppress the methamphetamine on the grounds that there was no reasonable suspicion of criminal activity to intercept and detain the Express Mail package and there was no probable cause to support the issuance of the search warrant.

The magistrate judge found that there was reasonable suspicion of criminal activity to support the interception and detention of the package. United States v. Johnson, No. 8:96CR147, slip op. at 7-8 (D. Neb. Oct. 9, 1997) (report and recommendation). The magistrate judge also found that there was probable cause to

support the issuance of the search warrant. Id. at 8. In addition, assuming for purposes of analysis that there was no probable cause, the magistrate judge found that the search warrant application and affidavit were not so deficient as to cause a reasonable officer to believe the search warrant was invalid. Id., citing United States v. Leon, 468 U.S. 897 (1984). The magistrate judge recommended denial of the motion to suppress. The district court conducted a de novo review and adopted the report and recommendation. Id. (Nov. 3, 1997) (order). Appellant entered a conditional guilty plea to the conspiracy count, reserving the right to appeal the denial of the suppression motion. This timely appeal followed.

Appellant argues the district court erred in denying the motion to suppress because there was no reasonable suspicion of criminal activity to support the interception and detention of the package. She argues the characteristics relied upon by the government as part of the Express Mail/ Narcotics Profile are typical of a broad category of "innocent" mail. She also argues there was no probable cause to support the issuance of the search warrant because the affidavit did not contain sufficient information about the skill and reliability of the drug dog. Appellant argues that the available information in fact showed that the drug dog had a relatively poor performance record. Appellant further argues that under these circumstances no reasonable officer would have relied on the validity of the search warrant.

We review the findings of fact for clear error and the ultimate question whether there was reasonable suspicion of criminal activity de novo. See, e.g., Ornelas v. United States, 517 U.S. 690, 699 (1996). Individuals have a right to be free from unreasonable searches and seizures of items they place in the mail. See, e.g., United States v. Van Leeuwen, 397 U.S. 249, 251 (1970). Law enforcement authorities must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for investigation. Id. at 252-53.

Reasonable suspicion exists when, based on the totality of the circumstances, an officer possesses a "particularized and objective basis" for suspecting that the package contains contraband, that is, more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). Moreover, "[c]onduct typical of a broad category of innocent people provides a weak basis for suspicion." United States v. Weaver, 966 F.2d 391, 394 (8th Cir.) (citation omitted), cert. denied, 506 U.S. 1040 (1992).

> While we are mindful that "conduct which would be wholly innocent to the untrained observer . . . might acquire significance when viewed by an agent who is familiar with the practices of drug [traffickers] and the methods used to avoid detection," . . . "it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation."

United States v. Beck, 140 F.3d 1129, 1137 (8th Cir. 1998) (citations omitted).

The government relied upon the following facts to support the officer's reasonable suspicion of criminal activity: the labels were hand-written, the package was mailed from one individual to another individual at the same address, the package was mailed from a narcotics source state, and the return address zip code was different from the accepting zip code. We hold that these particularized facts, when considered individually and in combination, do not support a finding of reasonable suspicion of criminal activity to warrant the interception and detention of the package sent by appellant.

The record before us wholly lacks a description of Inspector Vajgert's inferences, or deductions from his experience, that the factors in the Express Mail/Narcotics profile are consistent with characteristics of packages found to contain contraband, and that the package in question might contain contraband. The inspector did not testify at the suppression hearing, and his affidavit did no more than

state that he had eight years of experience as a postal inspector along with some training courses, and that the package in question met the Express Mail/Narcotics Profile. The Supreme Court has made it particularly clear that "based on the whole picture, the detaining officers must have a particularized and objective basis for suspecting a particular [package detained] of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). In this case, there was no articulation of how the officer's experience bore upon his appraisal of the package in light of the profile.

Law enforcement officers are permitted to draw "inferences and deductions that might well elude an untrained person." Id. at 418. Nevertheless, those inferences and deductions must be explained. Specifically, the Fourth Amendment requires an officer to explain why the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed. See id. at 418-22 (particular inferences drawn by experienced Border Patrol officers justified the stop at issue); Ornelas v. United States, 517 U.S. at 700 (1996) (in determining existence of probable cause, officer may draw inferences based on experience; based on officer's experience, loose panel below back seat armrest suggested storage of drugs rather than wear and tear); 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.4(a), at 143 (3d ed. 1996) (because the officer's inferences and deductions were fully explained at the suppression hearing, Cortez correctly held that "a particularized and objective basis" existed for the stop). Such evidence is lacking in this case. For example, we know nothing of Inspector Vajgert's experience with handling packages that match the profile, his assessment of which combinations of profile characteristics are indicative of criminal activity, or whether that assessment is well-founded in light of the inspector's experience. The government has not provided a basis for Inspector Vajgert's suspicion, that is, the use of his experience in articulating a particularized and objective basis for the search. Nor has the government proven that the inspector's suspicion was objectively reasonable. All we have is the unadorned, unexplained Express Mail/Narcotics Profile.

The case before us stands in stark contrast to United States v. Dennis, 115 F.3d 524 (7th Cir. 1997), because the court in Dennis did not rely upon the profile alone. The officer in Dennis explained that based upon his particular experience as an investigator, the profile factors were consistent with the characteristics of packages found to contain contraband. Id. at 532. Because of the high cost of Express Mail, explained the officer, only about five percent of such mail is personal correspondence. Id. Moreover, because of the speed and reliability of Express Mail, as well as a free telephone tracking service, drug traffickers frequently use the service to send personal correspondence containing contraband.[1] Id. The officer therefore concluded that personal correspondence sent via Express Mail is likely to contain illegal drugs. Id. Under these circumstances (including the other factors in the profile), the court held that the postal inspector's suspicion "was reasonable and justified detaining the Express Mail package." Id. at 532-33. Judge Ripple's dissent correctly stressed that the use of the profile in a decision to detain the mail "must be an exercise of defensible professional law enforcement judgment before it can justify detention of a package." Id. at 536. The presence of several profile characteristics "without any particularized assessment of their meaning" gives no legitimate basis for detention. Id. The record before us presents no such assessment, leaving us with a profile whose characteristics appear as consistent with innocence as with criminal activity.[2]

---

[1]The dissent recites a number of facts about Express Mail that were before the court in Dennis, but which are absent from the record before us.

[2]A second fact distinguishes the instant case from Dennis: the package in Dennis was heavily taped--a circumstance perhaps more suspicious than the others in the profile. Id. at 532. Indeed, because the present case lacks this additional factor, it closely resembles Reid v. Georgia, 448 U.S. 438, 441 (1980), a case in which the characteristics of a "drug courier profile" were held insufficient to create a reasonable suspicion of criminal activity (petitioner arrived from city identified as "principal place" for cocaine importation, arrived at airport early in morning,

None of the particularized facts relied upon by the government was inherently suspicious, and each can be readily characterized as "conduct typical of a broad category of innocent people." United States v. Weaver, 966 F.2d at 394; see United States v. Dennis, 115 F.3d at 535-40 (Ripple, J., concurring in part and dissenting in part) (arguing that authorities lacked reasonable suspicion to detain package mailed (1) from Los Angeles, (2) by Express Mail from one individual to another individual, (3) heavily taped, and (4) from a zip code different from that of return address); cf. United States v. Green, 52 F.3d 194, 198 (8th Cir. 1995) (rejecting travelling alone, carrying a small bag, wearing new and baggy clothes, and failing to make eye contact with officer as indicative of criminal activity). For example, a business or vacation traveler may address labels by hand, using his or her address or the destination address as the return address, and mail packages from airport postal stations. California is a "source" state for narcotics. However, it is also the most populous state in the country, as well as one of the most frequently visited states, for business and pleasure, facts which undermine the significance of its role as a "source" state as an articulable basis for reasonable suspicion of criminal activity. See United States v. Beck, 140 F.3d at 1137-38 & nn.2-3 (citing cases).

Characteristics consistent with innocent use of the mail can, when taken together, give rise to reasonable suspicion. See United States v. Sokolow, 490 U.S. 1, 10 (1989) (combination of innocent travel factors). However, we hold that, these particularized facts, none of which is inherently suspicious, do not constitute reasonable suspicion of criminal activity, even considered together, for intercepting and detaining the package sent by appellant. As noted above, the record does not contain any particularized assessment of their significance for purposes of determining reasonable suspicion.

petitioner and companion appeared to conceal fact of traveling together, and the two had no luggage other than shoulder bags).

Accordingly, we reverse the district court's denial of the motion to suppress, which, in turn, requires that we reverse the conviction, and we remand the case to the district court for further proceedings, if so advised.

HANSEN, Circuit Judge, dissenting.

I believe the facts, when viewed as a whole, support the existence of a reasonable, articulable suspicion. Therefore, I respectfully dissent.

As a threshold matter, it may be prudent to identify the issues on which I believe the court and I agree. The mere act of subjecting the postal package to a drug sniffing dog did not constitute an illegal search or seizure in this case. See United States v. Place, 462 U.S. 696, 707 (1983); United States v. Riley, 927 F.2d 1045, 1048 n.4 (8th Cir. 1991) (noting that "exposing [a defendant's] checked baggage to a trained sniffing dog may be no seizure at all"). But for the alleged lack of reasonable suspicion to detain the package, the dog sniff, the warrant application, and the warrant execution were all otherwise righteous and legal. Thus, the sole difference between my conclusion and that of the court is whether Inspector Vajgert possessed a reasonable, articulable suspicion for removing the package from the stream of mail. As I apply the relevant law to the facts, I believe that he did.

This court has long recognized "that a package in the mail may be detained on the basis of reasonable suspicion to believe it contains contraband pending further investigation directed toward establishing probable cause which will support issuance of a search warrant." Garmon v. Foust, 741 F.2d 1069, 1072 (8th Cir. 1984) (citation omitted). Although we decide the ultimate issue of reasonable suspicion de novo, in making this decision, "'[w]e look to the totality of the circumstances, in light of the officer's experience.'" United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997)

(emphasis added) (quoting United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997)).

The court concludes that the factors relied on by Inspector Vajgert do not add up to reasonable suspicion. Conspicuously missing from the court's calculus, however, is any credit for Inspector Vajgert's experience. In my view, the court takes the factors out of context when it fails to credit that experience. We should assess the existence of a reasonable suspicion in light of the inspector's experience, not ours. Inspector Vajgert has eight years of experience in enforcing federal mail and drug laws. He has special training in investigating the use of the Express Mail service for narcotics trafficking. This experience and training should count for something. "[C]ircumstances which appear innocent to the outside observer may suggest criminal activity to experienced law enforcement personnel, and in determining whether reasonable suspicion exists, law enforcement authorities may assess these circumstances in light of their experience." United States v. Dennis, 115 F.3d 524, 533 (7th Cir. 1997). See also United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975) (stating that a law enforcement officer "is entitled to assess the facts in light of his experience").

I believe the instant case is, at its essence, indistinguishable from Dennis. In Dennis, a postal inspector detained a package and subjected it to a drug sniff "because it possessed several characteristics which met the U.S. Postal Service's narcotics package profile," and based on the inspector's experience "were consistent with a package containing narcotics." Dennis, 115 F.3d at 531. In a thorough and well-reasoned opinion, Judge Harlington Wood, Jr., held that "the confluence of . . . factors in a single package when appraised by the postal inspector, an experienced narcotics investigator, amounted to reasonable suspicion that the Express Mail package may have contained contraband and justified the investigatory detention." Id. at 533.

I also wish to address briefly the factors Inspector Vajgert relied upon in deciding to detain the package. The package labels were handwritten, and the package was addressed from one individual to another individual, both at the same address. I concede this could reflect purely innocent conduct. But a trained postal inspector could reasonably conclude otherwise. This was not an ordinary mail package, but rather an Express Mail package. The Express Mail service is a costlier method of shipping, and a method seldom used for personal correspondence. See Dennis, 115 F.3d at 532 (discussing postal inspector's testimony that "only about five percent of all Express Mail is personal correspondence"). Finally, as the court concedes, the package originated from a narcotics source city and state. We have, on many occasions, credited this factor on the reasonable suspicion side of the ledger when viewed in the presence of other factors, including a law enforcement officer's experience and training in such matters. See, e.g., United States v. Johnson, 64 F.3d 1120, 1125 (8th Cir. 1995) (noting that the officers involved "were aware through their experience that Chicago is a source city for drugs"), cert. denied, 516 U.S. 1139 (1996).

To be sure, the record in this case would probably have been stronger if the underlying data supporting the creation of the Postal Service's Express Mail narcotics package profile had been introduced and the Inspector's testimony about his suspicions, training, and experience heard live. Nonetheless, under the totality of the circumstances, I would hold that the removal of the package from the stream of mail for a drug dog sniff did not violate the Fourth Amendment. Consequently, I would affirm the district court's judgment in this case.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-