# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1671

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Valarie E. Reeves, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: September 15, 2000
Filed: November 14, 2000

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

_____

PER CURIAM.

Valarie Reeves entered a conditional plea of guilty to a charge of possession with intent to distribute methamphetamine. The charges arose from the controlled delivery of a priority mail package addressed to Ms. Reeves that contained the drug. Reeves argues that the initial seizure of the package was not supported by reasonable suspicion. She also asserts that statements made by her after delivery of the package were involuntary, irreparably tainting statements made after her arrest and requiring suppression of those statements.

Having thoroughly reviewed the case, we find no error in the rulings of the District Court[1] on these issues. Accordingly, we affirm for the reasons stated in that court's order. See 8th Cir. R. 47B.

BEAM, Circuit Judge, concurring specially.

This is a very close case that has been well presented by defendant's counsel. And, I agree with Judge Bye's able articulation of the applicable law and would likely join in the granting of the motion to suppress except that my analysis of the facts is somewhat different than that outlined in the dissenting opinion.

At the outset, I agree that we have held that a package may not be removed from the stream of mail and detained without a warrant unless there exists "a reasonable suspicion based on articulable, objective facts that a package contains contraband." United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999). I am not certain, however, that under the "totality of circumstances" test outlined in United States v. Cortez, 449 U.S. 411, 417-18 (1981), all pertinent information had to be possessed by Postal Inspector Reeves. The dissent notes that Inspector Reeves had knowledge of Ms. Reeve's "numerous prior arrests for controlled substances violations, and had served time in prison," post at 5, only after he had ordered the package removed from the mail. However, it is clear that Investigator Andrew, the supplier of whatever information Inspector Reeves possessed, had discovered this information well before action was taken by Reeves.

However, assuming that Postal Inspector Reeves needed to individually possess all of the information required to develop "reasonable suspicion," I am still inclined to

---

[1]The Honorable William G. Cambridge, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

affirm the district court based upon my understanding of the record. The following exchange occurred between the United States Attorney and Investigator Andrew:

> Q: And during this interview, what specific information did Ms. Abbott provide to you?

> A: She advised that Jenny Baker and Keith Miller lived with [his] mother, Valarie Reeves, at 1329 Rose Street, and that they were receiving shipments of narcotics -- not narcotics, methamphetamines through the mail from California, and that it was being delivered to their mailbox in front of their house by the U.S. mail service.

Transcript at 51.

In my view, the district court was free to find, from this, that Ms. Reeves was not only aware of the drug sales of her son Keith Miller and his girlfriend Jenny Baker, but she was also aware that the drugs were being delivered to her mail box. While I agree that there is perhaps no preinterdiction evidence available to Inspector Reeves that Ms. Reeves was "receiving the packages and selling" as noted in the dissent's footnote 4, there is also no evidence that she was not receiving packages and "using." Indeed the inference is to the contrary. Investigator Andrew testified that when he asked Inspector Reeves to take a look at 1329 Rose Street and the packages coming from California, he "supplied [Inspector Reeves] with all of the information I had at that point and let him make his decision." Transcript at 80. From this I think there were sufficient articulable and objective facts available to Inspector Reeves to form a reasonable suspicion that the package contained contraband, whether it was to be "used" or "sold."

Accordingly, I would affirm the district court.

BYE, Circuit Judge, dissenting.

No one disputes that the government removed a priority mail package addressed to Valarie Reeves from the stream of mail in late February 1998. The critical question is whether the government possessed reasonable suspicion (and whether it properly articulated its suspicion) that the package contained contraband at the time of its removal from the stream of mail. I believe that the government knew enough to suspect that Keith Miller (Reeves's son and housemate) trafficked in methamphetamine. But the government's reasonable suspicion of Miller is insufficient, in my view, to cast suspicion on Reeves — the parcel's recipient. I therefore dissent.

I

The majority dispenses with an explanation of the facts. But I find it necessary to delve into the details of this case.

On February 9, 1998, Investigator Keith Andrew of the Sidney, Nebraska Police Department received a letter from Jackie Abbott. Abbott's letter indicated that Miller sold narcotics; Abbott's husband was apparently one of Miller's customers. Two days later, Investigator Andrew contacted Abbott and asked her to come to the station to discuss her letter; she agreed. She advised Investigator Andrew that Miller lived with his girlfriend (Jenny Baker) and his mother (Reeves) at 1329 Rose Street. Abbott told Investigator Andrew that Miller and Baker received shipments of methamphetamine from California through the mail. Miller and Baker sold some of the meth, and used the remainder themselves. Abbott mentioned Reeves, but Investigator Andrew did not record Abbott's precise words in his report. He later recalled Abbott stating that Reeves used drugs, and seemed to be generally aware that Miller and Baker sold drugs.

Investigator Andrew began an investigation of Miller by checking local utility records and visually inspecting the residence at 1329 Rose Street from his patrol car.

-4-

On February 12, 1998, he contacted United States Postal Inspector Clayton Reeves[2] and informed him of Abbott's tip. Investigator Andrew advised Postal Inspector Reeves that Miller and Baker had prior arrests for methamphetamine.

Postal Inspector Reeves took the next step. He contacted the Sidney, Nebraska post office and confirmed that Miller, Baker, and Reeves all received mail at the Rose Street address. He then asked the postmaster to perform a mail watch,[3] and to contact him if parcels from California, a narcotics source state, arrived for that address. Almost two weeks later, on February 25, 1998, the Sidney postmaster contacted Postal Inspector Reeves. A priority mail package had arrived in Sidney from California addressed in handwriting to "Val Revies" at 1329 Rose Street. The package bore a return address of 2239 Butte Street in Redding, California. Postal Inspector Reeves asked the postmaster to forward the package to his office in Omaha. *After* requesting the postmaster to forward the package, Postal Inspector Reeves learned from Investigator Andrew that Reeves had numerous prior arrests for controlled substances violations, and had served time in prison.

Postal Inspector Reeves tracked down information about the package's return address in Redding, California. He learned from California drug agents that there was active methamphetamine trafficking on Butte Street, but he could not obtain specific information about the return address listed on the package. Postal Inspector Reeves next contacted the inspector in charge of his Midwest division to request a one-day

---

[2]Postal Inspector Reeves and Valarie Reeves are not related to each other.

[3]"A mail watch entails asking the post office to specifically watch for a particular address and, if anything comes in for that address, to pull it out of the mail stream and notify the postal inspectors. The postal inspectors then decide whether to pursue anything further or simply return it to the mail stream." United States v. Glover, 104 F.3d 1570, 1575 n.1 (10th Cir. 1997).

mail cover.[3]  He needed the mail cover to incorporate the address information on Reeves's package into an affidavit to obtain a search warrant for the package.  Postal Inspector Reeves received written approval on February 26, 1998.

That same day, Reeves's package arrived in Omaha.  Postal Inspector Reeves recorded the fact that the package was sent from a narcotics source state, California, an indicium of drug trafficking in his experience.  He called in a narcotics canine officer from the Omaha Police Department to perform a dog sniff.  The dog sniffed the package and alerted in a positive manner, signaling the presence of narcotics.

On the strength of that information, Postal Inspector Reeves obtained a search warrant from a federal magistrate judge later that afternoon.  He opened the package and discovered 3.7 grams of a white, powdery substance which tested positive for methamphetamine, and 1.3 grams of marijuana in the package.

The next day, February 27, Postal Inspector Reeves — together with other federal, state, and local law enforcement agents — conducted a controlled delivery of the package at Reeves's home in Sidney.  Agents observed Baker collect the package from the mailbox.  An ensuing search of the home yielded the drugs and the package in an upstairs bedroom and bathroom.  Reeves was arrested and detained.  Postal

---

[3]Postal regulations require inspectors to obtain approval before recording the information on the outside of a letter or package.  See 39 C.F.R. § 233.3 (1999).  A "mail cover" is a non-consensual record of that information.  See, e.g., United States v. Hinton, 222 F.3d 664, 674 (9th Cir. 2000) ("Mail covers may be ordered only pursuant to a written request to the Chief Postal Inspector or his authorized agents specifying the reasonable grounds necessary for the cover. . . . The regulations further state that under no circumstances may a postmaster or postal employee furnish information . . . to any person, except as authorized by mail cover order.") (internal citations and punctuation omitted).

Inspector Reeves and Investigator Andrew later questioned Reeves in custody; she admitted sending $100 to California for small amounts of meth and marijuana.

After her indictment in the United States District Court for the District of Nebraska, Reeves moved to suppress the drug evidence uncovered during the search of her home. She contended that Postal Inspector Reeves had removed the parcel from the stream of mail without reasonable suspicion that it contained contraband, a Fourth Amendment violation. She also contended that her later confession at the sheriff's office should be suppressed as the poisoned fruit of an earlier, coerced confession in her bedroom, a Fifth Amendment violation.

A magistrate judge held two separate evidentiary hearings and ultimately denied Reeves's motion to suppress. The district court adopted and approved the magistrate judge's findings of fact and conclusions of law in a separate written order on June 15, 1999. Reeves pleaded guilty to a conspiracy charge, 21 U.S.C. § 846, but she retained her right to appeal the district court's adverse suppression ruling. Following her guilty plea, Reeves filed this appeal.

II

A government official may not remove a package from the stream of mail and detain it without a warrant unless he has "a reasonable suspicion based on articulable, objective facts that a package contains contraband." United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999) (citing United States v. Van Leeuwen, 397 U.S. 249, 251-53 (1970)).

> Reasonable suspicion exists when, based on the totality of the circumstances, an officer possesses a particularized and objective basis for suspecting that the package contains contraband, that is, more than an inchoate and unparticularized suspicion or hunch. Moreover, conduct

typical of a broad category of innocent people provides a weak basis for suspicion.

United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999) (internal citations and punctuation omitted).

We employ a "totality of the circumstances" test to assess a law enforcement officer's reasonable suspicion. See United States v. Cortez, 449 U.S. 411, 417-18 (1981). We must view the accumulated circumstances objectively, with an appreciation for the perspective of a trained law enforcement officer. See United States v. Gray, 213 F.3d 998, 1000 (8th Cir. 2000) (quoting Cortez, 449 U.S. at 418). Postal Inspector Reeves — the government official who decided to remove Reeves's package from the stream of mail — had just begun an investigation at the time that Reeves's package first surfaced at the Sidney post office. At that juncture, Postal Inspector Reeves knew only that:

- Reeves lived at 1329 Rose Street with her son, Keith Miller, and his girlfriend Jenny Baker;
- all three received mail at that address;
- an informant had stated that Miller and Baker received drugs through the mail, then sold and used those drugs;
- the informant had also stated that Reeves was "aware" of their sales, but that Reeves was apparently just a drug user; and
- Reeves had received a priority mail package from a known drug source state addressed in handwriting.

These circumstances, viewed in their totality, gave rise to the inference that *Keith Miller* received packages of drugs at 1329 Rose Street. Postal Inspector Reeves could reasonably have suspected that Miller (and perhaps Baker) sold drugs; in fact, Miller may well have been the intended target of his investigation. The fact that Miller dealt drugs does not cast suspicion upon Reeves. Yet the majority somehow morphs reasonable suspicion of Miller into suspicion of Reeves.

When a package from California arrived for Reeves, Postal Inspector Reeves probably assumed that she was in league with Miller. But the informant never suggested that Reeves sold drugs;[4] the informant fingered only Miller and Baker as drug sellers. As an afterthought, the informant mentioned that Reeves used drugs. Investigator Andrew rated that information so unimportant that he failed even to record Reeves's drug use in his written report. Thus, packages arriving for Reeves should not have aroused suspicion because her conduct (as then known to Postal Inspector Reeves) violated no federal criminal laws.

The important point is that Postal Inspector Reeves failed to *articulate* reasonable suspicion toward Reeves (and hence her package). I do not discount the possibility that agents trained in the art of detecting drug smuggling might place great weight on the fact that a resident of Miller's home received a suspicious package

---

[4]Investigator Andrew admitted during cross-examination by Reeves's attorney, Ms. Gilg, that the informant had not linked Reeves to Miller's drug sales.

GILG: Okay. When you spoke with Jackie Abbott about the drug activities of Keith Miller, did she mention Valarie Reeves as being involved in the drug activity?

ANDREW: She indicated that she was, from information, more of a user. She was aware that the drugs were arriving, but that was the extent of it. That's as far as I questioned on it.

GILG: So her information was not that Valarie Reeves was receiving the packages and selling, is that true?

ANDREW: No, that she was aware of what was going on and using.

Transcript 79-80 (February 22, 1999 Suppression Hearing). Postal Inspector Reeves relied, in large measure, upon the informant's report (conveyed through Investigator Andrew) in establishing reasonable suspicion.

(priority mail, person-to-person, handwritten, from a drug source state). Drug traffickers may well attempt to elude detection by arranging for delivery of their shipments of contraband in the names of friends, relatives, and roommates. But all that is grist for the mill. In this case, neither Postal Inspector Reeves nor any other law enforcement agent testified at the suppression hearing that, in their experience, a drug pusher might use a housemate's name to send and deliver packages of drugs. Absent some such evidence to link Reeves to Miller's suspected drug trafficking, Postal Inspector Reeves failed to articulate a sufficient basis for suspecting Reeves.

> Law enforcement officers are permitted to draw inferences and deductions that might well elude an untrained person. Nevertheless, those inferences and deductions must be explained. Specifically, the Fourth Amendment requires an officer to explain why the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed. . . . Such evidence is lacking in this case.

Johnson, 171 F.3d at 604 (citations omitted and internal punctuation altered).

The government's reasonable suspicion of Miller cannot, on its own, justify a more expansive dragnet including others (like Reeves) living with Miller. Cf. United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990) ("Evidence of association or acquaintance, though relevant, is not enough by itself to establish a conspiracy.") (citations omitted). To adopt the contrary view would impermissibly shift the focus in Fourth Amendment cases from a person-based to a property-based perspective. Historically, Fourth Amendment analysis focuses on individuals, not on real estate. Indeed, the Supreme Court regularly intones that "the Fourth Amendment protects people, not places," a forceful reminder from Justice Stewart's majority opinion in Katz v. United States, 389 U.S. 347, 351 (1967).

Postal Inspector Reeves failed to articulate sufficient reasons for detaining Reeves's package from the stream of mail. Viewing the record objectively, as we

must, Postal Inspector Reeves merely possessed the type of "hunch" that may not pass for reasonable suspicion. See Terry v. Ohio, 392 U.S. 1, 27 (1968). Because Postal Inspector Reeves lacked reasonable, articulable suspicion to detain Reeves's package, and because he had not yet obtained a warrant, his two-day detention of Reeves's priority mail package violated her Fourth Amendment rights. I would therefore suppress the resulting evidence in this case — the package, the drugs inside, and Reeves's resulting confessions — as fruit of the poisoned tree. See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.