# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1665

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Augustine Demoss, Jr., | * | |
| | * | |
| Appellee. | * | |
| ----------------------------------- | * | |
| Metropolitan Airports Commission, | * | |
| as owner and operator of the | * | Appeal from the United States |
| Minneapolis-St. Paul International | * | District Court for the |
| Airport; City of St. Louis, Missouri, | * | District of Minnesota. |
| as owner and operator of the Lambert- | * | |
| St. Louis International Airport; Airports | * | |
| Council International, North America, | * | |
| an association representing government | * | |
| bodies that own and operate the | * | |
| principal airports served by scheduled | * | |
| air carriers in the United States; City of | * | |
| Kansas City, as owner and operator of | * | |
| the Kansas City International Airport, | * | |
| | * | |
| Amici on behalf of Appellant. | * | |

_____

Submitted: October 17, 2001
Filed: February 7, 2002

_____

Before HANSEN,[1] Chief Judge, RICHARD S. ARNOLD and BOWMAN, Circuit
Judges.

_____

BOWMAN, Circuit Judge.

The United States appeals from the order of the District Court adopting the recommendation of the Magistrate Judge (and denying, in a written order, the government's objections to the Report and Recommendation) that the court grant Augustine Demoss's suppression motion. The court held that evidence obtained as the result of a search of a Federal Express (FedEx) package, to be used in the prosecution of Demoss on federal drug charges, was obtained in violation of Demoss's Fourth Amendment rights. We vacate the order and remand.

The facts were developed during the course of two hearings, the first of which was held before the Magistrate Judge who recommended granting Demoss's motion to suppress. The second hearing was held in the District Court, where the law-enforcement officer who initially identified the package at issue testified again at the request of the court to fill in the gaps on some "critical matters." Transcript of Clarification Hearing at 3 (Jan. 19, 2001). The relevant facts are undisputed.

Around five o'clock on the morning of August 18, 2000, Officer Mark Meyer, a ten-year law-enforcement veteran of the (Minneapolis) Metropolitan Airport Commission, including three years with the narcotics unit as a canine handler, was working drug interdiction during the "morning sort" at the FedEx facility in Minneapolis. Meyer's mission was to visually inspect packages as they moved at a walking pace along an ankle-high conveyor belt, looking for anything suspicious. At the end of the belt, FedEx employees sorted the packages into containers by location

---

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

of the intended recipients and then put the packages onto trucks for delivery. At around 6:30 a.m., two things immediately caught Meyer's attention about a package on the belt that was addressed to "Joshua Smith." First, the air bill on the package was handwritten rather than typed or computer-generated. Second, the package was sent from California, known by Meyer to be a "source" state, a significant state of origin for illegal drugs coming into Minnesota.

Meyer lifted the package off the conveyor belt, and as soon as he did, he noticed that it smelled strongly of perfume, perhaps to mask the smell of narcotics. Looking at the package and the air bill, he also noticed additional characteristics: the package was heavily taped, with the seams all sealed, again possibly to limit the smell of illegal drugs emanating from the package; no phone numbers were listed for either the sender or the recipient; the FedEx charge was paid in cash; and the package was sent priority overnight. With Meyer's experience as a narcotics officer, these factors in combination raised his suspicions that the package contained an illegal substance.

At this point, Meyer took the package to another room at the FedEx facility. He collected his drug-detecting dog from his car and subjected the package to a canine sniff, together with several packages that were not suspicious and a few others that Meyer had taken from the belt that morning about which he was somewhat suspicious. The dog alerted to the package addressed to "Joshua Smith." Meyer obtained a search warrant, and the package was opened. Inside was 500 mg of a substance that field tested as methamphetamine. The necessary steps were then taken to effect a controlled delivery to the recipient address on the air bill. An individual later determined to be Demoss identified himself to the officer posing as a FedEx delivery person as "Joshua Smith" and then signed for and accepted delivery of the package. Demoss was arrested and made some incriminating statements to officers. He was charged with federal drug crimes.

We review de novo the District Court's "ultimate legal conclusion[]" that the officer in question violated Demoss's Fourth Amendment rights by conducting a seizure unsupported by reasonable suspicion. United States v. Rodriguez-Arreola, 270 F.3d 611, 615 (8th Cir. 2001). In granting Demoss's motion to suppress both the methamphetamine retrieved from the package and the statements Demoss made upon his arrest, the District Court concluded that the package was "seized" for Fourth Amendment purposes when Meyer lifted it from the conveyor belt. According to the court, because Meyer lacked reasonable suspicion based on the information available to him at that time, the seizure violated Demoss's constitutional rights and the evidence obtained as a result was required to be suppressed. Because we conclude that the court's decision "reflects an erroneous view of the applicable law," we vacate the suppression order. Id. (quoting United States v. Layne, 973 F.2d 1417, 1420 (8th Cir. 1992), cert. denied, 506 U.S. 1066 (1993)).

When Meyer took the package from the belt, he knew little about the suspicious nature of the package, only that the air bill was handwritten (diminishing the likelihood that the package was sent by a business) and that it arrived in Minnesota from a source state for illegal drugs. These facts do not amount to reasonable suspicion sufficient under the Fourth Amendment to detain the package, that is, to seize it. See United States v. Vasquez, 213 F.3d 425, 426 (8th Cir. 2000) (noting there was inadequate evidence of reasonable suspicion to seize a package where the package "was incorrectly addressed even though the sender and recipient had the same last name; the air bill was handwritten, marked 'priority overnight,' and contained no account number; and the package was sent from California"); United States v. Johnson, 171 F.3d 601, 604 (8th Cir. 1999) (holding there was inadequate evidence of reasonable suspicion to seize a package where "the labels were hand-written, the package was mailed from one individual to another individual at the same address, the package was mailed from a narcotics source state, and the return address zip code was different from the accepting zip code"). But we hold that the package

was not seized at the moment Meyer lifted it from the belt, so reasonable suspicion was not required for him to do so.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). At the time Meyer lifted the "Joshua Smith" package, Demoss's "possessory interests" were limited. The sender, of his own accord, had turned the package over to a third party for delivery to Demoss. While Demoss's expectation that the package would not be opened and searched en route was legitimate, see id. at 114, there could be no expectation that the package would not be handled or that its physical attributes would not or could not be observed, cf. Smith v. Maryland, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."). By entrusting the package to FedEx for delivery to "Joshua Smith," a/k/a Demoss, the sender virtually *guaranteed* that any characteristic of the package that could be observed by the senses would be so observed. And there was no legitimate expectation that law-enforcement officers would not be among the observers. "The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities." Jacobsen, 466 U.S. at 122. Further, any "interference" with the package when Meyer lifted it off the belt was insignificant. See Vasquez, 213 F.3d at 426 (holding that "officers' actions in examining the outside of the package . . . do not constitute a detention requiring a reasonable, articulable suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package"). Meyer held the package only briefly before he observed additional suspicious characteristics. The package was not "seized" for Fourth Amendment purposes by Meyer's lifting it from the conveyor belt.

The conclusion that the lifting of the package was not a Fourth Amendment seizure brings us to the next step in our analysis: by the time there was a seizure, was there reasonable, articulable suspicion to support it? The determination of whether a government agent's suspicion is constitutionally reasonable is exceedingly fact-specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be " understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418 (1981) (analyzing seizure of the person). In this case, as soon as Meyer lifted the package, he noticed the heavy perfume smell and the excessive tape on the package, features that, in his experience, were intended to mask the smell of illegal drugs. See Johnson, 171 F.3d at 605 n.2 (noting that heavy taping of an Express Mail package is "a circumstance perhaps more suspicious than the others in the" Express Mail/Narcotics profile). In the time it took him to read the air bill, Meyer further noted the lack of telephone numbers for sender and recipient, the cash payment, and that the package was sent priority overnight. Considered alone, each of the features Meyer noted is innocuous. But "[c]haracteristics consistent with innocent use of the mail can, when taken together, give rise to reasonable suspicion." Id. at 605. Taking into account Meyer's experience in the interdiction of packages containing illegal drugs, his collective observations of the "Joshua Smith" package amounted to a sufficient basis for the objectively reasonable, articulable suspicion necessary to seize the package and conduct a canine sniff. As Meyer moved the package away from the conveyor belt and detained the package for a canine sniff, he "exert[ed] dominion and control over the package," that is, the package was seized for Fourth Amendment purposes. Jacobsen, 466 U.S. at 121 n.18. But that seizure needed only to be supported by an objectively reasonable, articulable suspicion that the package contained contraband, and we hold that it was.

The question remains whether the subsequent detention of the "Joshua Smith" package for the canine sniff was, by its "nature and extent," an unreasonable intrusion upon Demoss's legitimate privacy expectations. United States v. Place, 462 U.S. 696,

705 (1983). If so, then the seizure becomes unreasonable "in the absence of probable cause"—reasonable suspicion is no longer enough. Id. at 709. We hold that the detention of the "Joshua Smith" package never became unreasonable. First, as we have noted before, the seizure was not from Demoss's person, but from a third party with whom the sender had contracted for delivery (and with the permission of the third party). See id. at 705. The detention of the package for the canine sniff was brief, lasting only twenty minutes. See id. at 709 ("[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion."). Moreover, Meyer "diligently pursue[d]" his investigation into the package. Id. There was little risk that the package would not have made it onto the appropriate delivery truck, had the dog not alerted to it. In fact, the other suspicious packages Meyer had pulled from the belt that morning were put back on the belt to continue on their way. Up to the time of the dog's alert, which provided the necessary probable cause to detain the package while a search warrant was sought, the detention was wholly reasonable.

In sum, we hold that Meyer's lifting of the package from the conveyor belt, for the brief time it would take an officer with his experience to develop a reasonable, articulable suspicion that the package contained contraband, was not a seizure. By the time Meyer's actions did become a seizure, he had the necessary reasonable suspicion to detain the package, and he did so reasonably.

The District Court's suppression order is vacated and the case is remanded for further proceedings, including the denial of Demoss's motion to suppress.

HANSEN, Circuit Judge, concurring.

Although I wholeheartedly agree with today's result, I write separately because I conclude that no seizure occurred in this case until Officer Meyer infringed upon

Demoss's interest in the timely delivery of the package. I also conclude that the drug dog's positive alert to the package generated probable cause to justify the seizure.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A parcel delivered to a private mail carrier is an "effect" within the meaning of the Fourth Amendment. United States v. Jacobsen, 466 U.S. 109, 114 (1984). "[I]ndividuals have a Fourth Amendment right to be free from unreasonable searches and seizures of items placed in the . . . mail . . . ." United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999). Whether Demoss is entitled to Fourth Amendment protection in this case, however, first turns upon a threshold question: whether, within the meaning of the Fourth Amendment, Officer Meyer "seized" this parcel. See Minnesota v. Carter, 525 U.S. 83, 92 (1998) (Scalia, J., concurring) (stating that determination of whether "seizure" has occurred is threshold question to Fourth Amendment analysis). A "seizure" of property or effects "occurs when there is some meaningful interference with an individual's possessory interests in that property." Jacobsen, 466 U.S. at 113.

In concluding that Meyer "seized" this package in a constitutional sense the moment he lifted it off the conveyor belt, the district court relied upon language in United States v. Reeves, 233 F.3d 555 (8th Cir. 2000), Sundby, and United States v. Johnson, 171 F.3d 601 (8th Cir. 1999), stating that "law enforcement authorities must have a reasonable suspicion based on articulable, objective facts that a package contains contraband before detaining it from the mail without a warrant." Sundby, 186 F.3d at 875. The district court's and Demoss's reliance on these cases is unfounded, however, because these cases simply do not address the threshold seizure issue. Rather, in Reeves, Sundby, and Johnson the parties conceded or we assumed that a seizure had occurred, and we then resolved the issue of whether the seizure was supported by antecedent reasonable suspicion. In Johnson, we held that an inspection officer did not have a reasonable suspicion to "intercept and detain" an express mail

package.  Johnson, 171 F.3d at 605.  We did not, however, recite the facts supporting this assumption.  Instead, we merely stated that it was undisputed that the package was "intercepted and detained."  Id., 171 F.3d at 602.  Similarly, in Sundby, we simply assumed the package was "seized," and thus we failed to recite any facts detailing the manner in which the authorities detained it.  Sundby, 186 F.3d at 872.  In Reeves, we affirmed the district court, concluding that the seizure of a package was supported by reasonable suspicion.  The majority opinion did not recite the facts of the case, nor did it address the seizure issue.  Judge Bye, in dissent, did recite the facts of the case, which are markedly different from the facts presented here.  In Reeves, the Sidney, Nebraska, postmaster rerouted a package destined for Sidney to Omaha for further inspection.  The Omaha postmaster detained the package for two days before he conducted, with the assistance of law enforcement officials, a controlled delivery of the package.  The assumed seizure in Reeves was a "two-day detention."  Reeves, 233 F.3d at 560 (Bye, J., dissenting).  Thus, Reeves indicates, if anything in regard to this issue, that a "seizure" of mail involves a more substantial interference with the processing and delivery of mail than what occurred in this case.

We did have the opportunity to address the threshold seizure issue in United States v. Vasquez, 213 F.3d 425 (8th Cir. 2000).  In Vasquez, we held that officers' "actions in examining the outside of [a] package and then subjecting the package to a dog sniff as it sat at the rear of [a] delivery truck do not constitute a detention requiring a reasonable, articulable suspicion."  Id. at 426.  We reasoned that there was no "seizure" because "the officers had not delayed or otherwise interfered with the normal processing of the package."  Id. (emphasis added).  In support of this proposition, we cited United States v. Harvey, 961 F.2d 1361, 1363-64 (8th Cir.) (per curiam), cert. denied, 506 U.S. 883 (1992), for the following proposition: there is "no seizure when officers moved bags from public overhead baggage area to aisle to facilitate dog sniff because owners were not aware the sniff was taking place and travel would not have been interrupted if dog had not detected contraband."  Vasquez, 213 F.3d at 426 (emphasis added).  We also relied upon United States v. Ward, 144

F.3d 1024, 1032 (7th Cir. 1998), for this proposition: "detention occurred only when officer held bag for later dog sniff, <u>interrupting bag's transport and requiring placement on later bus</u> if dog did not alert." <u>Vasquez</u>, 213 F.3d at 427 (emphasis added). <u>Vasquez</u>, <u>Harvey</u>, and <u>Ward</u> reveal that a "meaningful interference" with an individual's possessory interest in luggage or mail deposited with a common carrier must involve something more than the mere lifting of a package off a conveyor belt in a mail sorting facility.

In <u>Harvey</u>, police officers boarded an empty Greyhound bus with a drug-sniffing dog after the passengers had exited the vehicle during refueling. The dog alerted, indicating that narcotics were contained in the overhead bins. The officers moved the luggage from the overhead bins to the aisle to facilitate a dog sniff. The dog alerted to two of the bags, and the officers then located and arrested the owners of the bags. We held that "because there was no meaningful interference with appellants' possessory interests in their baggage, . . . no seizure occurred." <u>Harvey</u>, 961 F.2d at 1364.

In <u>Ward</u>, the defendant purchased a Greyhound bus ticket from Los Angeles to Indianapolis. The defendant did not board the bus; instead, he checked a bag containing cocaine at the Greyhound terminal in Los Angeles and took a flight to Indianapolis to retrieve the bag at its destination point. En route to Indianapolis, the bus made a scheduled stop in Springfield, Missouri. The Drug Enforcement Agency (DEA) routinely inspected eastward bound buses passing through Springfield, and DEA agents did inspect the bus transporting Ward's bag. The DEA agents removed the bag from the luggage compartment of the bus and presented the bag to a narcotics-detection dog. The dog alerted to it, but before the agents could place the bag back on the bus, the bus departed for Indianapolis. The DEA agents in Springfield called ahead and had agents prepare a look alike bag for delivery in Indianapolis. The agents arrested Ward when he attempted to retrieve the bag at the Indianapolis Greyhound terminal. The <u>Ward</u> court stated that "[i]t was as if he had shipped a package with

Greyhound." Ward, 144 F.3d at 1031. The Ward court concluded that the mere movement of a bag not in the possession of the owner is not a seizure per se, but that the handling of the bag could ripen into a seizure if the handling of the bag interfered with the recipient's expectation of timely delivery. The Ward court reasoned that when a person delivers a parcel to a common carrier for delivery, then "the owner's possessory interest is defined by the common carrier's contractual obligation to deliver the bag at a specified time. . . . [A] detention does not begin to interfere with the owner's possessory interest until it delays delivery of the package beyond the contractually agreed upon hour." Id. at 1031. Because a "person who deposits an item in the . . . mail retains far less of an interest in the mailed item than does a person who checks his luggage for transport with a common carrier," United States v. England, 971 F.2d 419, 420 (9th Cir. 1992), the rationale underlying Harvey and Ward applies with even greater force to this case.

Demoss could have had no reasonable expectation that his parcel would not have been handled by other persons and that its exterior would not have been exposed to others for viewing. Cf. Ward, 144 F.3d at 1032 ("He could reasonably have foreseen that the bag would be handled, moved around, and even taken off the bus . . . . He could have no reasonable expectation . . . that the bag would not be touched, handled, or even removed from the bus prior to the bag's arrival in Indianapolis."). Demoss had no possessory interest in having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time. His only possessory interest in the package was timely delivery, and until Officer Meyer's actions impinged upon that interest, there was no seizure. Officer Meyer's action in merely lifting this parcel off a conveyor belt and setting it aside for a brief inspection that would not have otherwise interfered with timely delivery (but for the positive alert from the narcotics dog) impinged upon no cognizable Fourth Amendment interest. See United States v. Place, 462 U.S. 696, 717 n.5 (1983) ("'[T]he mere detention of mail not in [one's] custody or control amounts to at most a minimal or technical interference with [one's] person or effects, resulting

-11-

in no personal deprivation at all.'" (emphasis added)) (Brennan, J., concurring) (quoting United States v. Place, 660 F.2d 44, 53 (2d Cir. 1981), aff'd, 462 U.S. 696 (1983)); Ward, 144 F.3d at 1033 ("[Officer] did not 'seize' Ward's bag merely by touching and then removing it from the luggage compartment. Handling the bag to that limited extent did not impinge on any of the rights that the Fourth Amendment protects." ); England, 971 F.2d at 420 (concluding that setting aside mail parcel for dog sniff does not amount to seizure because "[i]t is the extent of the interference with the defendant's possessory interest in his property, not the physical movement of the property, that determines whether a seizure has occurred").

Thus, I agree with the court when it concludes that this package was not seized for Fourth Amendment purposes when Officer Meyer lifted it from the conveyor belt, but I respectfully disagree that it became seized when he then moved it away from the conveyor belt for a dog sniff. In this circumstance, there is no legally relevant distinction between lifting and holding this package for an instant and lifting and holding this package for twenty minutes, so long as its ultimate contracted for timely delivery was not frustrated. In neither case is Demoss's possessory interest in the parcel infringed. Thus, for Fourth Amendment purposes, any attempt to draw a meaningful distinction between these two circumstances would be impracticable if not impossible. I choose to cast my lot with those cases both from this and other circuits indicating that a piece of luggage or mail delivered to a common carrier is not "seized" within the meaning of the Fourth Amendment until the authorities have interfered with a possessory interest in the luggage or mail such that the expectation of timely delivery of the package or luggage has been frustrated. See United States v. Johnson, 990 F.2d 1129, 1132 (9th Cir. 1993) (concluding that there is no seizure where the detention of luggage "in no way interfered with his travel, or frustrated his expectations with respect to his luggage"); England, 971 F.2d at 421 (concluding that detaining mail and subjecting it to dog sniff does not amount to seizure until packages are "delayed by their detention"); United States v. Riley, 927 F.2d 1045, 1048 (8th Cir. 1991) (dictum) (stating that handling luggage and exposing it to a narcotics-detecting dog while the

-12-

luggage was still in possession of a third party common carrier "was minimally intrusive," and may not be a "seizure at all"); Id. at 1048 n.4 (stating that there is "no 'seizure' when police dog sniffed luggage still in possession of third party common carrier and the procedure caused no significant delay to the suspect's travel"); United States v. Lovell, 849 F.2d 910, 916 (5th Cir. 1988) ("The momentary delay occasioned by the bags' removal from the conveyor belt was insufficient to constitute a meaningful interference with . . . [a passenger's] possessory interest in his bags. As a result, the agents' action did not constitute a seizure.").

Accordingly, I would hold that no seizure occurred in this case until Officer Meyer detained the package to the extent that he interfered with a timely delivery of the package. Of course, at that point, such a seizure was justified by the antecedent probable cause the officer had which was engendered by the narcotics dog's positive alert to the package. See Vasquez, 213 F.3d at 427 (stating that positive alert establishes probable cause). I concur in our court's reversal of the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-