# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2259
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Nebraska. |
| | * | |
| Joel Higuera, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: November 4, 2002

Filed: November 12, 2002
_____

Before WOLLMAN, FAGG, and LOKEN, Circuit Judges.
_____

PER CURIAM.

Postal inspector Daniel Medrano discovered methamphetamine in an Express Mail package ("the package") sent from California to Nebraska. Inspectors conducted a controlled delivery, and arrested Joel Higuera after he accepted delivery of the package. Higuera moved to suppress the methamphetamine, arguing Inspector Medrano lacked reasonable suspicion to seize the package from the delivery process and subject it to additional investigation that lead to discovery of the

methamphetamine. The district court[*] denied Higuera's motion. Higuera pleaded guilty, reserving the right to challenge the denial of the motion to suppress on appeal. Higuera now appeals. "We review the denial of the district court's motion to suppress de novo but review the underlying factual determinations for clear error, giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002).

A postal inspector checking Express Mail packages in a drug-interdiction program brought the package to Inspector Medrano's attention. Inspector Medrano set the package aside for further investigation, noting it had several qualities in common with a profile of packages containing illegal drugs. Inspector Medrano later testified that the following factors raised suspicion that the package contained illegal drugs: the package was mailed late in the day, the package had a handwritten label, affixed on the bottom of the package, and was paid for in cash, the package's seams were taped, the package weighed more than the typical Express Mail package, and the package was sent from Los Angeles, California. At the time Inspector Medrano set the package aside, it was too late in the day to conduct the next step in the investigation procedure – verify names and addresses of the sender and recipient on the label. Postal inspectors waited until the following morning to verify the names and addresses on the label. Postal inspectors could not confirm that the listed recipient "Joel Rodriguez" was associated with the listed delivery address. The inspectors then presented the package to Orkus, a dog trained to detect drugs. The dog alerted to the package. Inspectors obtained a search warrant, then searched the package, finding the methamphetamine.

---

[*]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska, adopting the report and recommendations of United States Magistrate Judge David L. Piester.

Higuera argues Inspector Medrano lacked reasonable suspicion to set aside the package for investigation because the factors used to support reasonable suspicion are applicable to a large number of parcels innocently mailed from one individual to another individual. Higuera also contends that the address verification failure cannot be used to support reasonable suspicion because Inspector Medrano was not aware of this discrepancy at the time of the seizure. The Government concedes that because setting the package aside for address verification altered the package's delivery schedule, the package was seized when Inspector Medrano removed the package from the delivery process for address verification. Thus, in evaluating whether Inspector Medrano had reasonable suspicion to detain the package, we must look only to those factors apparent to Inspector Medrano before the address verification and the dog sniff.

Each factor listed by Inspector Medrano, considered alone, is consistent with innocent mail use. Innocent characteristics, however, when observed as a whole by a trained law enforcement officer, can give rise to reasonable suspicion. United States v. Demoss, 279 F.3d 632, 636 (8th Cir. 2002). To support a conclusion that the seizure was justified by reasonable suspicion, the record must explain why seemingly innocent factors, when viewed in light of the law enforcement officer's training and experience, led the officer reasonably to suspect the package contained contraband. United States v. Johnson, 171 F.3d 601, 604 (8th Cir. 1999). The record supports a finding of reasonable suspicion in this case. Inspector Medrano had been a postal inspector for twenty years and a prohibited mailing specialist for over a year. The package was seized as part of a specific drug-interdiction program, staffed by prohibited mailing specialists from around the country. Inspector Medrano testified that approximately ninety-five percent of Express Mail customers are businesses. Inspector Medrano testified that in his training and experience, individuals trafficking in narcotics use Express Mail services because it is fast, arrives at a predictable time on a predictable day, can be tracked on the internet, and is relatively inexpensive when compared with other methods of distribution. Further, Inspector Medrano

explained how each apparently innocent factor, viewed in light of his training and experience, raised the suspicion that the package contained illegal narcotics. Persons mailing narcotics often choose to send packages late in the day, so the sender can blend in with other last-minute patrons, and would send the package on a Thursday or Friday, anticipating that the package would arrive by the weekend. Persons mailing narcotics typically hand-write the label, and if nervous, may attach the label improperly. Persons mailing narcotics typically pay in cash, to avoid leaving an additional record of the transaction. The package weighed seven pounds, ten ounces, and typical Express Mail weighs less than one pound. Drug packages are often heavily taped to prevent the contents from leaking or odors from being detected. Finally, the package was sent from Los Angeles, a source city for illegal narcotics. These factors, viewed in light of Inspector Medrano's experience, provided reasonable suspicion to detain the package for further investigation.

We thus affirm the district court's denial of Higuera's motion to suppress. See 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.