BOWMAN, Circuit Judge.
The United States appeals from the order of the District Court adopting the recommendation of the Magistrate Judge (and denying, in a written order, the government’s objections to the Report and Recommendation) that the court grant Augustine Demoss’s suppression motion. The court held that evidence obtained as the result of a search of a Federal Express (FedEx) package, to be used in the prosecution of Demoss on federal drug charges, was obtained in violation of Demoss’s *634 Fourth Amendment rights. We vacate the order and remand.
The facts were developed during the course of two hearings, the first of which was held before the Magistrate Judge who recommended granting Demoss’s motion to suppress. The second hearing was held in the District Court, where the law-enforcement officer who initially identified the package at issue testified again at the request of the court to fill in the gaps on some “critical matters.” Transcript of Clarification Hearing at 3 (Jan. 19, 2001). The relevant facts are undisputed.
Around five o’clock on the morning of August 18, 2000, Officer Mark Meyer, a ten-year law-enforcement veteran of the (Minneapolis) Metropolitan Airport Commission, including three years with the narcotics unit as a canine handler, was working drug interdiction during the “morning sort” at the FedEx facility in Minneapolis. Meyer’s mission was to visually inspect packages as they moved at a walking pace along an ankle-high conveyor belt, looking for anything suspicious. At the end of the belt, FedEx employees sorted the packages into containers by location of the intended recipients and then put the packages onto trucks for delivery. At around 6:30 a.m., two things immediately caught Meyer’s attention about a package on the belt that was addressed to “Joshua Smith.” First, the air bill on the package was handwritten rather than typed or computer-generated. Second, the package was sent from California, known by Meyer to be a “source” state, a significant state of origin for illegal drugs coming into Minnesota.
Meyer lifted the package off the convey- or belt, and as soon as he did, he noticed that it smelled strongly of perfume, perhaps to mask the smell of narcotics. Looking at the package and the air bill, he also noticed additional characteristics: the package was heavily taped, with the seams all sealed, again possibly to limit the smell of illegal drugs emanating from the package; no phone numbers were listed for either the sender or the recipient; the FedEx charge was paid in cash; and the package was sent priority overnight. With Meyer’s experience as a narcotics officer, these factors in combination raised his suspicions that the package contained an illegal substance.
At this point, Meyer took the package to another room at the FedEx facility. He collected his drug-detecting dog from his car and subjected’the package to a canine sniff, together with several packages that were not suspicious and a few others that Meyer had taken from the belt that morning about which he was somewhat suspicious. The dog alerted to the package addressed to “Joshua Smith.” Meyer obtained a search warrant, and the package was opened. Inside was 500 mg of a substance that field tested as methamphetamine. The necessary steps were then taken to effect a controlled delivery to the recipient address on the air bill. An individual later determined to be Demoss identified himself to the officer posing as a FedEx delivery person as “Joshua Smith” and then signed for and accepted delivery of the package. Demoss was arrested and made some incriminating statements to officers. He was charged with federal drug crimes.
We review de novo the District Court’s “ultimate legal conclusion[ ]” that the officer in question violated Demoss’s Fourth Amendment rights by conducting a seizure unsupported by reasonable suspicion. United States v. Rodriguez-Arreola, 270 F.3d 611, 615 (8th Cir.2001). In granting D'emoss’s motion to suppress both the methamphetamine retrieved from the package and the statements Demoss made upon his arrest, the District Court con- *635 eluded that the package was “seized” for Fourth Amendment purposes when Meyer lifted it from the conveyor belt. According to the court, because Meyer lacked reasonable suspicion based on the information available to him at that time, the seizure violated Demoss’s constitutional rights and the evidence obtained as a result was required to be suppressed. Because we conclude that the court’s decision “reflects an erroneous view of the applicable law,” we vacate the suppression order. Id. (quoting United States v. Layne, 973 F.2d 1417, 1420 (8th Cir.1992), cert. denied, 506 U.S. 1066, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993)).
When Meyer took the package from the belt, he knew little about the suspicious nature of the package, only that the air bill was handwritten (diminishing the likelihood that the package was sent by a business) and that it arrived in Minnesota from a source state for illegal drugs. These facts do not amount to reasonable suspicion sufficient under the Fourth Amendment to detain the package, that is, to seize it. See United States v. Vasquez, 213 F.3d 425, 426 (8th Cir.2000) (noting there was inadequate evidence of reasonable suspicion to seize a package where the package “was incorrectly addressed even though the sender and recipient had the same last name; the air bill was handwritten, marked ‘priority overnight,’ and contained no account number; and the package was sent from California”); United States v. Johnson, 171 F.3d 601, 604 (8th Cir.1999) (holding there was inadequate evidence of reasonable suspicion to seize a package where “the labels were hand-written, the package was mailed from one individual to another individual at the same address, the package was mailed from a narcotics source state, and the return address zip code was different from the accepting zip code”). But we hold that the package was not seized at the moment Meyer lifted it from the belt, so reasonable suspicion was not required for him to do so.
“A ‘seizure’ of property occurs when there is some meaningful interference with an individual’s possessory interests in that property.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). At the time Meyer lifted the “Joshua Smith” package, Demoss’s “possessory interests” were limited. The sender, of his own accord, had turned the package over to a third party for delivery to Demoss. While Demoss’s expectation that the package would not be opened and searched en route was legitimate, see id. at 114, 104 S.Ct. 1652, there could be no expectation that the package would not be handled or that its physical attributes, would not or could not be observed, cf. Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (“This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.”). By entrusting the package to FedEx for delivery to “Joshua Smith,” a/k/a Demoss, the sender virtually guaranteed that any characteristic of the package that could be observed by the senses would be so observed. And there was no legitimate expectation that law-enforcement officers would not be among the observers. “The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities.” Jacobsen, 466 U.S. at 122, 104 S.Ct. 1652. Further, any “interference” with the package when Meyer lifted it off the belt was insignificant. See Vasquez, 213 F.3d at 426 (holding that “officers’ actions in examining the outside *636 of the package ... do not constitute a detention requiring a reasonable, articula-ble suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package”). Meyer held the package only briefly before he observed additional suspicious characteristics. The package was not “seized” for Fourth Amendment purposes by Meyer’s lifting it from the conveyor belt.
The conclusion that the lifting of the package was not a Fourth Amendment seizure brings us to the next step in our analysis: by the time there was a seizure, was there reasonable, articulable suspicion to support it? The determination of whether a government agent’s suspicion is constitutionally reasonable is exceedingly fact-specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be “understood by those versed in the field of law enforcement.” United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (analyzing seizure of the person). In this case, as soon as Meyer lifted the package, he noticed the heavy perfume smell and the excessive tape on the package, features that, in his experience, were intended to mask the smell of illegal drugs. See Johnson, 171 F.3d at 605 n. 2 (noting that heavy taping of an Express Mail package is “a circumstance perhaps more suspicious than the others in the” Express Mail/Narcotics profile). In the time it took him to read the air bill, Meyer further noted the lack of telephone numbers for sender and recipient, the cash payment, and that the package was sent priority overnight. Considered alone, each of the features Meyer noted is innocuous. But “[c]haracteristics consistent with innocent use of the mail can, when taken together, give rise to reasonable suspicion.” Id. at 605. Taking into account Meyer’s experience in the interdiction of packages containing illegal drugs, his collective observations of the “Joshua' Smith” package amounted to a sufficient basis for the objectively reasonable, articulable suspicion necessary to seize the package and conduct a canine sniff. As Meyer moved the package away from the conveyor belt and detained the package for a canine sniff, he “exert[ed] dominion and control over the package,” that is, the package was seized for Fourth Amendment purposes. Jacobsen, 466 U.S. at 121 n. 18, 104 S.Ct. 1652. But that seizure needed only to be supported by an objectively reasonable, artic-ulable suspicion that the package contained contraband, and we hold that it was.
The question remains whether the subsequent detention of the “Joshua Smith” package for the canine sniff was, by its “nature and extent,” an unreasonable intrusion upon Demoss’s legitimate privacy expectations. United States v. Place, 462 U.S. 696, 705, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). If so, then the seizure becomes unreasonable “in the absence of probable cause” — reasonable suspicion is no longer enough. Id. at 709, 103 S.Ct. 2637. We hold that the detention of the “Joshua Smith” package never became unreasonable. First, as we have noted before, the seizure was not from Demoss’s person, but from a third party with whom the sender had contracted for delivery (and with the permission of the third party). See id. at 705, 103 S.Ct. 2637. The detention of the package for the canine sniff was brief, lasting only twenty minutes. See id. at 709, 103 S.Ct. 2637 (“[T]he brevity of the invasion of the individual’s Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion.”). *637 Moreover, Meyer “diligently pursue[d]” his investigation into the package. Id. There was little risk that the package would not have made it onto the appropriate delivery truck,- had the dog not alerted to it. In fact, the other suspicious packages Meyer had pulled from the belt that morning were put back on the belt to continue on their way. Up to the time of the dog’s alert, which provided the necessary probable cause to detain the package while a search warrant was sought, the detention was wholly reasonable.
In sum, we hold that Meyer’s lifting of the package from the conveyor belt, for the brief time it would take an officer with his experience to develop a reasonable, articulable suspicion that the package contained contraband, was not a seizure. By the time Meyer’s actions did become a seizure, he had the necessary reasonable suspicion to detain the package, and he did so reasonably.
The District Court’s suppression order is vacated and the case is remanded for further proceedings, including the denial of Demoss’s motion to suppress.