J-S01007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL KEITH HOPKINS | : | |
| | : | |
| Appellant | : | No. 222 WDA 2022 |

Appeal From the PCRA Order Entered October 29, 2021
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000573-2017

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  May 25, 2023**

Appellant, Daniel Keith Hopkins, appeals *pro se* from the post-conviction court's order denying his timely petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

We previously set forth the basic factual history surrounding Appellant's convictions in our memorandum decision affirming his judgment of sentence:

> Between November 8, 2016, and August 2, 2017, Appellant, Larry Dean, and others conspired to sell and sold 35 pounds of crystal methamphetamine worth $1.6 million throughout central Pennsylvania.  Appellant supplied the methamphetamine in Altoids mint tins, sent through priority mail packages from Arizona, to Dean, who distributed the methamphetamines to a circle of drug traffickers in Clarion, Clearfield, Elk, Forest, and Jefferson Counties in Pennsylvania.  The Pennsylvania State Police, the Office of the Attorney General, several local police departments, and the United States Postal Service conducted an extensive joint investigation ("Operation Snail Mail") involving controlled purchases, wiretaps, and review of financial documents

---

[*] Retired Senior Judge assigned to the Superior Court.

and wire transfers. Following a grand jury investigation and presentment naming 30 co-conspirators, Appellant was arrested in Arizona and transferred to Pennsylvania to stand trial. Gary Allen Knaresboro, Esq., a Jefferson County public defender, represented Appellant at trial.

A four-day joint trial commenced on March 19, 2018, in which, *inter alia*, a postal inspector, drug traffickers, and the drug traffickers' associates testified on behalf of the Commonwealth. A jury convicted Appellant of one count each of Corrupt Organizations, Conspiracy to Commit Corrupt Organizations, and Conspiracy to Deliver a Controlled Substance, and eighteen counts of Delivery of a Controlled Substance.

On April 4, 2018, the trial court sentenced Appellant to an aggregate term of 95 to 190 years of imprisonment. Appellant filed a Post-Sentence Motion challenging, among other things, the court's exercise of discretion in imposing consecutive terms of incarceration that rendered his aggregate sentence excessive.

***Commonwealth v. Hopkins***, No. 779 WDA 2018, 2019 WL 4899223, at *1

(Pa. Super. filed Oct. 4, 2019) (footnotes omitted).

This is an appeal from the order denying Appellant's first, timely petition for collateral relief under the PCRA. As set forth *infra*, Appellant raises eighteen issues, and several of those subsume additional issues. As best we can discern, each of Appellant's issues all trace back, to some degree, to his contention that he had no connection to his co-defendant and that Dean was the mastermind. We thus begin by discussing some additional evidence adduced by the Commonwealth tying Appellant to Dean's operation.

This case involved several agencies, almost three dozen co-defendants, and a jury trial with two dozen witnesses. Given the sheer volume of testimony and exhibits, we only discuss the points material to Appellant's argument that he was not a participant in Dean's scheme.

The initial investigation did not involve Dean or Appellant. It started in early 2017, when authorities learned from confidential informants that a man named Dale Hanlin was selling significant amounts of crystal meth. Authorities performed several controlled buys and eventually learned that Hanlin received crystal meth through the mail. Investigators ultimately obtained a wiretap on Hanlin's phone and recorded several conversations between Hanlin and Dean discussing the crystal meth operation.

Hanlin, like many of the co-defendants in this case, accepted a guilty plea and agreed to testify against Dean and Appellant. He testified that, in 1999, he served time in federal jail for cocaine trafficking. Upon his release, he worked as a truck driver but broke his back and began buying pain medications. Hanlin became reacquainted with Dean in 2015, and Dean introduced him to crystal meth. Hanlin would do favors for Dean due to Dean's declining health, such as driving him to doctor appointments. In exchange, Dean would give Hanlin some crystal meth. This arrangement ended when Dean moved to Arizona. Dean then contacted Hanlin from Arizona and told him to look out for a package, which Dean had sent to Hanlin's residence. From that point on, Hanlin would receive crystal meth in the mail through Dean and sell it. Dean would frequently fly back to Pennsylvania, and Hanlin would often pick him up at the airport. On at least one occasion, Dean was in Pennsylvania when a package arrived from Arizona. Dean did not say from whom he obtained the meth, only that "he was getting it from the Mexican mob." N.T., 3/20/18, at 202.

Hanlin first met Appellant in jail. Appellant told him "that if [Dean] didn't keep his mouth shut, somebody would get arrested and come in and cut his tongue out[.]" *Id.* at 207. Hanlin took this to mean that, if Dean implicated someone in the Mexican mob, one of its members would purposely get arrested to silence Dean, who was also incarcerated. Appellant also asked Hanlin if Hanlin was snitching. Hanlin said no. Appellant told him, "'Well, you should since everybody else is telling on you. You should tell on [Dean]. … If I was you, I would.'" *Id.* at 208.

Hanlin introduced Jeanne Gouldthread to Dean, after Dean asked Hanlin "if I knew somebody trustworthy he could send out [to Arizona.]" *Id.* at 194. Gouldthread testified that she initially helped Dean with tasks like grocery shopping when he was in Pennsylvania. Eventually, Hanlin asked her to fly to Arizona. Dean arranged a flight and itinerary, and forwarded it to Gouldthread. She provided that material to investigators, which showed that Dean had used the email address "Danhopkins952@gmail.com" to email the ticket. *Id.* at 35. The flight was one way, as Gouldthread was to drive Dean back to Pennsylvania. When she arrived, Dean offered her a line of meth and told her that Hanlin got his drugs from Dean. *Id.* at 39. Dean took her to his camper, which was parked in a lot that was a few feet from a home. *Id.* at 41. Gouldthread confirmed that the address of that home was 4150 Bantry Lane, which was owned by Appellant. Gouldthread testified that she entered Appellant's home on one occasion and observed other people using his computer.

Another witness tying Appellant to Dean was Tracy Harmon, who testified that he met Dean sometime in 2013. N.T., 3/22/18, at 203. Harmon was employed as a contractor, and Dean asked him to paint a home in Pennsylvania that he planned to sell. Dean sold the home and afterwards temporarily stayed with Harmon. Eventually, Dean informed Harmon that he intended to move to Arizona, and Harmon accompanied him there to find a home. He met Appellant through Dean in Arizona, and Appellant sold Harmon some drugs. After living there for a time, Dean moved back to Pennsylvania and again temporarily resided with Harmon. Dean would occasionally come home from the post office with a package, and there would be crystal meth taped to the insides. Dean informed Harmon that Appellant was the supplier. *Id.* at 222. Eventually, Dean moved back to Arizona.

Harmon then became a participant in the crystal meth operation. Starting in 2016, Harmon would receive packages at his home, followed shortly thereafter by Dean's arrival from Arizona. On one occasion in 2017, Dean arrived and inquired about a package. Harmon stated that he had not yet received it. Dean told Harmon, "[Appellant] ripped me off." *Id.* at 230.

Appellant also lodges several complaints concerning actions undertaken in Arizona by other authorities. By way of background, the authorities enlisted several United States Postal Inspectors to assist in tracking parcels sent from Arizona to the suspected Pennsylvania sites, as well as packages making the return trip as Hanlin informed authorities that Dean instructed him to send cash back to Arizona. Inspector Justin Koble, based out of Pittsburgh, became

involved in November of 2016. Agent Koble asked Postal Inspector Ethan Paszko, who was employed in Tucson, Arizona, for assistance with a parcel shipped from Arizona on March 27, 2017. Agent Paszko visited the originating post office location, which was inside a store named Do It Yourself Hardware. The store owners provided Agent Paszko with access to their video surveillance system. Armed with the package tracking number supplied by Agent Koble, Agent Paszko was able to narrow down the timeframe. He then took a picture of the surveillance system's display with his cellphone, which he then sent to Agent Koble. The man sending the package was identified as Appellant. Agent Paszko asked the store owners to inform him if the man from the video visited their store.

On May 30, 2017, the owners contacted Agent Paszko and told him that the same man had mailed two parcels, which were still onsite. Agent Paszko took possession of the two packages, which he then placed in a separate package for delivery to Agent Koble. He also viewed the store's video surveillance, which again showed Appellant mailing the parcels. Inspector Koble and other agents decided to let one of the two parcels be delivered, which was ultimately delivered to a PO box. The authorities obtained a search warrant for the other parcel, which was to be delivered to Tracy Harmon's address. The package contained 110.31 grams of crystal meth.

We now return to the procedural history of this appeal. On May 3, 2021, Appellant filed a timely petition for relief under the PCRA. George Daghir, Esq., was appointed and on September 23, 2021, Attorney Daghir filed a "no

merit" letter and motion to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Attorney Daghir listed the eighteen issues that Appellant wished to review. Petition to Withdraw/No-Merit, 9/23/21, at 5-7. Counsel addressed each of Appellant's claims and concluded, after an examination of the record, that there were no meritorious claims. *Id.* at 8–25. Counsel mailed a copy to Appellant and informed him of his rights.

The PCRA court issued a notice of intent to dismiss the petition without a hearing on September 29, 2021. Appellant did not file a response and instead filed a premature notice of appeal before the PCRA court formally dismissed the petition. While this appeal was docketed with the Court of Common Pleas, it was not transmitted to this Court. On October 29, 2021, the PCRA court issued an order denying Appellant's petition for relief and granting counsel's petition to withdraw. In the order, the PCRA court stated that it "concurs with [Attorney Daghir's] analysis and has nothing substantive to add." Order, 10/29/21, at 1 (single page order).

Appellant again filed a timely notice of appeal, but the court failed to transmit the appeal to this Court. On January 10, 2022, Appellant filed a letter with this Court requesting a status update. We thereafter directed the trial court to process the notices of appeal, which were separately docketed. We quashed one of the appeals as duplicative. Appellant complied with the trial court's order to file a concise statement of matters complained of on appeal.

The PCRA court authored a Rule 1925(a) opinion in response. Appellant now raises the following issues for our review:

> 1. Whether the Commonwealth had lawful and exclusive powers to prosecute Appellant for crimes committed in the State of Pennsylvania[.]
>
> 2. Whether the Commonwealth violated the Supremacy Clause[.]
>
> 3. Whether the Commonwealth violated Appellant's 4th Amendment … rights, with respect to search and seizure[.]
>
> 4. Whether the Commonwealth deprived Appellant of due process and equal protection of the law[.]
>
> 5. Whether the trial court erred in finding … Appellant guilty, where the Commonwealth failed to prove beyond a reasonable doubt that … Appellant was actively in concert with others and possession of drugs with intent to deliver[.]
>
> 6. Whether the trial court [i]mproperly charged the jury[.]
>
> 7. Whether the Commonwealth exercised [f]raud [u]pon the [c]ourt[.]
>
> 8. Whether the Commonwealth exercised egregious misconduct[.]
>
> 9. Whether the trial court failed to charge the [j]ury with impeachment instructions, to where a critical Commonwealth witness gave prior inconsistent statements, and admitted, on-the-record, that he was untruthful[.]
>
> 10. Whether Appellant had constructive possession of drugs[.]
>
> 11. Whether the trial court abused its discretion in allowing hearsay testimony to be injected into Appellant's trial[.]
>
> 12. Whether the trial court imposed an illegal and excessive sentence … [.]
>
> 13. Whether the trial court imposed an illegal sentence, where it imposed a term of imprisonment of 95 … years to … 190 years[.]

14. Whether the trial court erred in allowing Commonwealth witnesses to provide impermissible and prejudicial opinion testimony[.]

15. Whether the Commonwealth violated the [f]our [c]orners [r]ule[.]

16. Whether the Commonwealth withheld favorable exculpatory testimony[.]

17. Whether the Commonwealth exercised [*sic*] Double Jeopardy[.]

18. Whether the Commonwealth exercised [*sic*] [g]overnment [i]nterference, refusing to furnish Appellant with [t]ranscription of [n]otes [t]estimony, and [d]iscovery, so that Appellant could develop claims for appeal[.]

Appellant's Brief at xxiii-xxv.

Our standard of review from an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the record and is free of legal error. **Commonwealth v. Davis**, 86 A.3d 883, 887 (Pa. Super. 2014). Here, where appointed counsel filed a "no merit" letter and was permitted to withdraw, we are not examining PCRA counsel's ineffectiveness in evaluating whether Appellant's case presented any arguably meritorious issues. **See Commonwealth v. Rykard**, 55 A.3d 1177, 1184 (Pa. Super. 2012), *abrogated on other grounds,* **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021) ("Preliminarily, we note that [the a]ppellant's claim that the PCRA court erred as a matter of law in permitting counsel to withdraw, although necessarily discussing PCRA counsel's alleged ineffectiveness, is not an ineffectiveness claim."). Instead, we review the claims examined by PCRA counsel and the PCRA court when dismissing the petition.

- 9 -

The PCRA court may dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013) (quotation marks and citation omitted). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Id.* at 604–05 (quotation marks and citation omitted). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa. Super. 2015) (quoting *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007)).

We conclude that Appellant's brief is deficient and noncompliant with the Rules of Appellate Procedure to a degree that we cannot conduct meaningful appellate review of the vast majority of Appellant's claims. As reflected in counsel's "no merit" letter and demonstrated by Appellant's scattershot approach herein, Appellant raises so many issues it is difficult to identify, let alone address, any discrete legal argument in support of the contention that the PCRA court erred in dismissing the petition. These defects

have hampered appellate review to the degree we find that most of Appellant's claims have been waived.

The Rules of Appellate Procedure require that the argument section of the brief "be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). A few examples will suffice to illustrate Appellant's noncompliance with this fundamental directive. Appellant lists his sixth question presented as a challenge to jury instructions. Yet, his sixth claim by heading states, "The Commonwealth exercised structural error." Appellant's Brief at 25. Similar mismatches pervade the brief. For instance, Appellant begins his argument with the heading "layered claim of ineffective assistance of counsel." *Id.* at 2 (unnecessary capitalization omitted). This is followed by sixteen pages of confusing argument, most of which acts as a narrative explaining Appellant's view of the evidence.

Appellant then raises, as his second argument, "a claim of trial counsel's ineffectiveness." *Id.* at 18 (unnecessary capitalization omitted). This claim is followed by a largely repetitive argument challenging the strength of the Commonwealth's evidence. Appellant then raises as his third argument a claim that trial counsel ineffectively failed to call Appellant to the stand, a claim that does not appear in his list of questions presented. *Id.* at 22. Appellant does not discuss the trial court's colloquy concerning his right to

testify. Appellant simply claims that he "would have [offered] testimony that he was not Larry Dean's supplier, or involved with mailing methamphetamine through U.S. mail [on] May 30, 2017[,] or prior to. But for trial counsel's deficient performance, the outcome of the proceedings would have been different." *Id.* at 22-23.

We could overlook these errors if Appellant's legal arguments were otherwise decipherable. They are not. His arguments, even when individually set forth, often incorporate several separate legal principles. Again, a few examples will suffice. Appellant's sixth argument contains the heading "The Commonwealth exercised structural error," which does not correspond to any of the questions presented. We quote *verbatim* the full argument from Appellant's brief for this claim:

> When the trial court allowed 404(b) to be introduced to the jury, at trial, it affected the framework of how a trial proceeds rather than simply an error in the trial process itself. ***Arizona v. Fulminante*** 499 U.S. 279, 310, 111 S.Ct, 1246, 1265 113 L,Ed.2d 302(1991). In connection with the underlying incident, the Commonwealth built its foundation of the Complaint/Affidavit of Probable Cause premised on the sworn declaration of/from Tracy Harmon to Trooper Craddock. The Commonwealth's key witness, Tracy Harmon gave a sworn declaration to Trooper Craddock, that he met Appellant for the first time between the years 2013-2014, and that he had purchased marijuana from … Appellant during that encounter. Tracy Harmon exercised a prior inconsistent statement, to where at trial, he placed on— the— record that he gave a false statement to Trooper Craddock. (NT 03/22/2018 pp.224) ***Ellis v. State***, 790 So.2d 813, 815-16 (Miss.2001) ***see also Finley v. State***, 725 So.2d 226, 231—32 (Miss.1998). The trial court opined 404(b) to be admissible. However, the trial court abused its discretion. ***Commonwealth v. Thomas*** 717 A.2d 468, 476 (Pa.1998). In addition, without a formal and sufficient indictment or information, a court does not

- 12 -

acquire subject matter jurisdiction and thus an accused may not be punished for a crime, ***Honomichl v. State,*** 333 N.W.2d 797, 797 (S.D. 1983). The false statement given to Trooper Craddock of/from the Commonwealth's key witness gave emphasis to the Commonwealth violating the Four Corners Rule. In turn, a violation of the Four Corners Rule made the Complaint/Affidavit of Probable Cause invalid. ***Davis v. Andrews***, Tex Civil App., 361 S.W.2d 419, 423. Without a valid complaint any judgment or sentence rendered is "*void ab initio*" ***Ralph v. Police Court of El Cerrito***, 190 P.2d 632, 634, 84 Cal. App.2d 257 (1948). *Inter alia*, the Commonwealth misled the jury to believe that Appellant (shipped))) the two (2) outbound packages to Pennsylvania on May 30, 2017. Inspector Paszko took pictures of the two parcels utilizing his "cell phone", and there is no sworn declaration of/from the Do It Yourself Hardware store owner(s) Inspector Paszko could have secured a written declaration of/from the Hardware store/contracted Postal owner(s) and/or a sworn declaration via "video" utilizing his cell phone but failed to do so. The identities of the Hardware store owner(s) with respect to the May 30, 2017 incident is unknown. The 6ᵗʰ Amendment right to be confronted with the witness against him "consist of an act of setting the witness face to face with the accused, in order that the latter may make an objection he has to the witness, or the witness may (identify))) the accused. The constitutional privilege to cross examine the unnamed hardware store owners)/employee(s) have been abridged and denied Appellant a fair trial. ***Davis v. Alaska*** 415 U.S. 308, 94 S.Ct. 1105, 39 L,Ed.2d 347. Thus the Commonwealth exercised structural error. ***Arizona v. Fulminante*** 499 U.S. 279, 310, 111 S.Ct, 1246, 1265 113 L,Ed.2d 302(1991)

Appellant's Brief at 26-28 (*verbatim*).

Structural error does not apply to straightforward evidentiary issues; it applies to certain fundamental protections that are not amenable to a harmless error analysis. ***See Weaver v. Massachusetts***, 582 U.S. 286, 294-95 (2017); ***see also Commonwealth v. Jordan***, 212 A.3d 91, 103 (Pa. Super. 2019) (granting a new trial without a showing of prejudice where trial court barred the defendant's family members from attending *voir dire*). That

aside, Appellant's argument is not a focused argument, but rather a conglomeration of multiple legal principles packaged together with no coherent thread linking them. Appellant's reference to Pennsylvania Rule of Evidence 404(b) demonstrates this point. Immediately prior to trial, Appellant's counsel moved to exclude references by Harmon to Appellant's selling drugs to him in 2013, when he first traveled to Arizona with Dean. The trial court determined that the evidence was relevant to the history of the case. *See Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012) ("Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception."). Appellant does not address how the trial court abused its discretion in this regard.

Along these same lines, Appellant's objection preserved this claim for review on direct appeal and Appellant makes no attempt to show why this evidence, even if erroneously admitted, requires a new trial.[1] *See Commonwealth v. Miles*, 846 A.2d 132, 137-38 (Pa. Super. 2004) (setting forth the three grounds for finding that an erroneous evidentiary ruling was

_____

[1] We will extend to Appellant the benefit of assuming that appellate counsel was ineffective for failing to address the issue on direct appeal, and thus, we cite the standard for reviewing this claim on direct appeal as it is more favorable to Appellant. *See Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014) ("As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error.").

- 14 -

harmless and could not have contributed to the verdict). To the extent that Appellant attempts to package this subcomponent of his claim as a layered claim of ineffectiveness, he fails to specifically plead and prove each prong of that test. Instead, he merely alleges, in conclusory fashion, that counsel was ineffective, which does not satisfy Appellant's burden. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011).

Appellant also appears to incorporate by reference several other arguments, which are equally confusing. For instance, his structural error argument references his "four corners" claim. According to his questions presented, that is his fifteenth issue; notwithstanding, Appellant discusses that legal claim on page five of his brief, as subsumed within the argument heading addressing trial counsel ineffectiveness, as follows:

> Under the 'four corners rule[,]' intentions of parties, especially that of grantor, is to be gathered from instrument as a whole and not from isolated parts thereof. *Davis v. Andrews*, Tex Civil App., 361 S.W.2d 419, 423.
>
> What this means, in order to establish Probable Cause to legally arrest someone, the Affidavit written by the Police Dept. And/or officer (must))) be true and correct as sworn to by the officer from start to finish. If an Affidavit and/or Complaint states one thing, however (additional evidence))) and/or (statements))) is contrary to the facts of the Affidavit of Probable Cause, the Affidavit is therefore invalid. The entire case (must))) therefore be dismissed on those grounds. Tracy Harmon is alleged to have met Appellant between the years 2013-2014, for the (first time))), on (one))) occasion. Mr. Harmon strategically engineered and manufactured his fraudulent encounter with Appellant. Mr. Harmon drank in

excess of a case of beer, per day, accompanied by a Crystal Meth addiction between the years 2013-2014.

Appellant's Brief at 5 (*verbatim*).

In addition to Appellant's tendency to cite cases from other jurisdictions, he fails to discuss these legal authorities in any fashion. In terms of an affidavit of probable cause, the "four corners" rule refers to the material that a reviewing court examines when determining whether probable cause existed. **See Commonwealth v. Coleman**, 830 A.2d 554, 560 (Pa. 2003) ("In analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the affidavit."). Appellant does not claim that a warrant[2] failed to establish probable cause based on the four corners of the affidavit but, instead, he appears to claim that the affidavit failed to establish probable cause because he believes that Harmon was not credible. As legal support, Appellant simply cites a 1962 case from Texas involving contractual law. The failure to articulate specific arguments supported by legal discussion precludes this Court from conducting meaningful appellate review.

The defects do not end there. As with the Rule 404(b) issue, Appellant's brief overlooks the differing standards that apply to issues which were raised and those that were not. For example, Appellant argues that the trial court abused its discretion in ruling against his pre-trial motion to sever his trial from Dean's. The trial court addressed this preserved claim in its Pa.R.A.P.

---

[2] Appellant does not specify which warrant he is addressing.

- 16 -

1925(a) opinion prepared for our review on direct appeal. Appellate counsel did not pursue this claim. Appellant recognizes that this involves a layered claim of ineffectiveness, but he fails to discuss the pertinent standards. *See* *Commonwealth v. Williams*, 141 A.3d 440, 471 (Pa. 2016) (discussing layered claims of appellate counsel ineffectiveness and recognizing that "arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief") (citation omitted). While there was no evidentiary hearing in this matter and we cannot examine whether counsel had a reasonable strategic basis for not raising these claims on direct appeal, the problem remains that Appellant would have to show that the trial court incorrectly ruled on the underlying motion. *See* *Commonwealth v. Crumbley*, 270 A.3d 1171, 1180 n.7 (Pa. Super. 2022) (recognizing that a claim of PCRA counsel ineffectiveness premised on a claim that a prior counsel was ineffective can succeed only if prior counsel was ineffective). He fails to do so.

We conclude that Appellant's noncompliance with the Rules of Appellate Procedure, combined with his failure to support his claims with pertinent legal authority and development, has impeded appellate review to the degree that we deem the majority of Appellant's claims waived. *See Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014) ("Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented

defendants.").  While we may liberally construe *pro se* filings, we cannot be expected to act as Appellant's counsel.  ***Id.***

We recognize that waiver of all arguments is disfavored, as the interests of justice dictate that this Court address any arguments that can reasonably be discerned.  In ***Commonwealth v. Lyons***, 833 A.2d 245 (Pa. Super. 2003), the *pro se* litigant filed a brief that presented twelve questions which bore "no relation to the eight sections of the argument or the divisions within the argument," and the brief was "rambling, repetitive and often incoherent." ***Id.*** at 252.  Still, "in the interest of justice" we addressed those arguments that could "reasonably be discerned" from the brief.  ***Id.***  We shall follow the same course here.

In this case, we can reasonably identify five claims: challenges to the weight of the evidence, the sufficiency of the evidence, the discretionary aspects of the sentence, an assertion that Agent Paszko unlawfully seized the packages mailed from the Do It Yourself Hardware store, and a claim under ***Brady v. Maryland***, 373 U.S. 839 (1963) (requiring the Commonwealth to disclose exculpatory evidence to the defense), which this Court found waived on direct appeal for deficient presentation.[3]  In assessing these claims, we will accept, for purposes of our disposition, that Appellant properly preserved

_____

[3] We also conclude that Appellant's "governmental interference" claim is moot. Appellant claims that he was denied access to transcripts and the certified record.  On May 6, 2022, this Court ordered the trial court, either directly or via prior counsel, to provide Appellant with the requested material, and Appellant's brief cites the transcripts.

- 18 -

claims of PCRA counsel's ineffectiveness pursuant to **Bradley** with respect to claims not addressed in the PCRA "no merit" letter. **But see Bradley**, 261 A.3d at 401 n.16 (noting that the case did not "involve the distinct **Turner/Finley** scenario" of appointed counsel filing a "no merit" letter at the PCRA court level and "sav[ing] resolution" of how PCRA counsel ineffectiveness claims must be raised in that context).

We can readily dispose of the weight and discretionary aspects of sentencing claims as this Court addressed them on direct appeal. 42 Pa.C.S. § 9543(a)(3) ("To be eligible for relief … the petition must plead and prove … [t]hat the allegation of error has not been previously litigated or waived."). Thus, those claims have been previously litigated. Alternatively, even if we accept that Appellant properly raised a distinct claim of ineffectiveness in connection with prior counsel's pursuit of these claims, **see Commonwealth v. Collins**, 888 A.2d 564, 570 (Pa. 2005) (explaining that a claim of ineffective assistance of counsel is analytically distinct), Appellant offers little argument as to why the outcome would be any different under an ineffectiveness framework. Instead, he simply relitigates the merits.

Nonetheless, we recognize that our direct appeal decision addressed Appellant's weight of the evidence claim only by reference to whether the jury could properly determine that eighteen total packages contained crystal meth (as only two packages were opened pursuant to a search warrant). To the extent that Appellant preserved and presented a separate claim that the

evidence failed to establish that he was a conspirator in Dean's enterprise, we disagree.[4]

The Commonwealth presented significant circumstantial evidence establishing Appellant's role in these crimes. The authorities obtained flight records showing when Dean flew to Pennsylvania. For example, Dean flew from Arizona to Pittsburgh on November 24, 2016, and did not return until December 10, 2016. However, on December 5, 2016, a package arrived at Hanlin's home, establishing that the operation continued even when Dean was not present. On March 14, 2017, Dean again flew to Pittsburgh, and Agent Paszko obtained video surveillance showing Appellant mailing a package from the Do It Yourself Hardware store on March 27, 2017. The Commonwealth also produced text messages sent between Appellant's phone and Dean's phone referencing drugs. For example, Appellant's phone sent Dean's phone a message stating, "I'm on way to mountain and my buddy says I can do 6 hats up front if your ready." N.T., 3/23/18, at 149. The testifying witness explained that "six hats" was code for six ounces of crystal meth. *Id.* On July 28, 2017, Appellant's phone sent a message to Dean's phone stating, "Get up and take care of business if it ain't Gonna make till Monday then western u it

_____

[4] A challenge to the weight of the evidence is analytically distinct from a challenge to the sufficiency of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Appellant does not discuss which elements of which crimes that he believes the Commonwealth failed to establish. Indeed, his sufficiency claim is simply an extension of his weight claim, and we will not separately discuss the elements of each of Appellant's crimes.

he pay." *Id.* at 152. That same day, a package left Pennsylvania to South Bantry Lane in Arizona. Authorities also obtained evidence from Appellant's internet service provider establishing that his computer frequently used the United States Postal Service's website to track packages.

The jury was free to accept Appellant's insistence that he was duped by Dean and that he was innocently mailing packages on Dean's behalf with no knowledge of the package's contents. Appellant's Brief at 19 (arguing that "Larry Dean was a (tenant) of Appellant in Tucson Arizona who[ ] had a rental agreement only"). But the jury was equally free to reject that claim, and the Commonwealth's evidence suffices to establish Appellant's guilt.

The sole claim that has not been previously litigated, and which we can readily discern, concerns Agent Paszko's seizing the parcels for investigative purposes. Again, presuming that Appellant properly presented a *Bradley*-like claim concerning PCRA counsel's failure to address this claim within the "no merit" letter, Appellant is not entitled to relief. As these types of claims most often arise in federal court due to federal jurisdiction over the mail, we quote the United States Court of Appeals for the Eighth Circuit on the relevant Fourth Amendment standard:

> A law enforcement officer must have reasonable suspicion that a piece of mail, or a package shipped via a commercial carrier, contains contraband to lawfully seize it for investigative purposes. *United States v. Johnson*, 171 F.3d 601, 603 (8th Cir. 1999). Seizure occurs when a package is removed from its ordinary progress in the mail and is diverted for further investigation. *Id.* An officer has reasonable suspicion that a package contains contraband if she has "a particularized and objective basis" that is more than an "inchoate and unparticularized suspicion or hunch."

- 21 -

> ***Id.*** (quoting ***Terry v. Ohio***, 392 U.S. 1, 27 … (1968)). The officer
> must be able to explain the basis of her suspicion. ***Id.*** at 604.
> The officer may cite as the basis of her belief, however, facts
> which, alone and to an untrained eye, appear innocuous, but
> which, to a trained officer familiar with the methods of drug
> traffickers, are sufficient to establish reasonable suspicion. ***Id.***;
> ***United States v. Demoss***, 279 F.3d 632, 636 (8th Cir.2002).

***United States v. Smith***, 383 F.3d 700, 704 (8th Cir. 2004).

We agree that Agent Paszko seized the parcels shipped from Arizona on May 30, 2017, from the Do It Yourself Hardware store when he disrupted their normal progress and mailed them to Pittsburgh for further inspection. However, we find that reasonable suspicion existed and therefore justified the warrantless seizure. This seizure occurred approximately eight months into a large-scale investigation, and Agent Knoble knew that a parcel sent from that same location on March 27, 2017 was addressed to a location associated with one of the participants of this drug ring. He conveyed this information to Agent Paszko. Thus, when the owners of the hardware store agreed to assist Agent Paszko and later informed him that Appellant had mailed two parcels, Agent Paszko had reasonable suspicion that these parcels contained contraband. Accordingly, any suppression motion on these grounds would have failed.

Finally, we address Appellant's ***Brady*** claim. The basis for this claim is that the Commonwealth had intended to call Nicole Reese, Appellant's girlfriend, as a witness. She had previously given an interview in which she made statements that indicated, according to the prosecutor, that she knew that Appellant "was mailing bad things in the mail." N.T., 3/23/18, at 42. The

prosecution informed Appellant that Reese refused to appear at trial, and that she informed a Pennsylvania State Trooper that if she did appear, she would say that "other people used [Appellant]'s computer and his cell phone." ***Id.*** This point is significant to Appellant's theory of the case in that it undercuts the strength of the circumstantial evidence concerning Appellant's computer tracking the crystal meth parcels and his phone messages to Dean, something testified to by other witnesses.

The trial court's opinion prepared on direct review determined that no ***Brady*** violation occurred for several reasons, including the fact that the Commonwealth did not learn of the information until Reese refused to appear. The Commonwealth immediately informed Appellant on the morning of March 22, 2018 of what Reese said when the prosecution learned of her refusal to appear.[5] Thus, there was no ***Brady*** violation as the Commonwealth did not withhold the material. Moreover, the court pointed out that Reese was Appellant's own girlfriend, and he could have produced her for trial if he wished.

On direct appeal, we deemed the claim waived due to inadequate development. ***Hopkins***, 2019 WL 4899223, at *2 ("Appellant's omissions and his failure to develop this issue not only violate our briefing requirements set forth in Pa.R.A.P. 2119(a)-(e), but also preclude this Court's meaningful

---

[5] The issue came up on March 23, 2018, when Appellant attempted to introduce what Reese told the trooper on cross-examination. The Commonwealth objected on hearsay grounds.

review."). While we conclude that PCRA counsel should have addressed this claim in his "no merit" letter, the PCRA court correctly explained that its opinion filed on direct appeal addressed why the underlying **Brady** claim does not warrant relief. We agree with the court's analysis.

Finally, we note that even if Appellant had properly preserved arguments to the other claims addressed within the "no merit" letter, the PCRA court's dismissal of his petition cogently explains why it agreed with PCRA counsel's assessment. We would adopt the PCRA court's rationale, had Appellant preserved those claims herein.

Order affirmed.

Judge Colins joins this memorandum.

Judge Kunselman concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2023